UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAURENCE PARIS and<br>INTERPHARM DEVELOPMENT, S.A.,<br><br>    Plaintiffs,<br><br>            vs.<br><br>R.P. SCHERER CORP.<br>R.P. SCHERER INC. and<br>R.P. SCHERER TECHNOLOGIES INC.<br><br>    Defendants. | **Civil Action No. 02-1044 (AET)**<br><br>**MEMORANDUM OPINION** |

**HUGHES, U.S.M.J.**

      This matter having come before the Court upon motion by Defendants R.P. Scherer Corp., R.P. Scherer Inc. and R.P. Scherer Technologies, Inc. ("Defendants") for Discovery *Order Sustaining Privilege*, [Docket Entry #212], returnable June 19, 2006. Plaintiffs Laurence Paris and Interpharm Development, S.A. ("Plaintiffs") submitted opposition to the Motion claiming Defendants failed to demonstrate that the documents in question were prepared "in anticipation of litigation". (Pl.s' Br. 5). The Court considered the submissions of the parties and conducted oral argument on June 21, 2006. For the reasons below, Defendant's Motion for Discovery *Order Sustaining Privilege* is denied.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

      In December 1997, Defendant and Plaintiff had entered into an Evaluation Agreement ("The Agreement"), pursuant to which Defendant had an exclusive right to evaluate Plaintiffs' carrageenan-only formulations for the purpose of determining whether those formulations would

be useful on a commercial scale. (Stevens Cert., Ex. A. ¶ 5 and Ex. B). The Agreement provided for an initial "option period" of six months to perform a preliminary evaluation, and the right of Defendant to proceed with a second "option period" to continue its evaluation for another twenty months, upon payment of additional consideration. (*Id.*, Ex. B, at Articles II and III). Defendant opted to exercise its rights to the second "option period," which would expire as of January 31, 2000. (*Id.*, at §3.3).

The Agreement further provided that Defendant would have the exclusive right during the option periods to negotiate with Plaintiff for a license for the product and any proprietary information thereto, or to purchase the rights to her formulations. (*Id*. at Article IV). Absent further agreement, upon termination of the option periods, Plaintiff would be free to shop her formulations to others, and Defendant would have no further obligations to her. (*Id.*).

In addition to Plaintiffs' carrageenan-only formulations, as part of the Gelatin Alternative Project, Defendant had developed and was pursuing its own primarily starch-based compositions for making gelatin-free soft capsules. (*Id.* ¶ 9). Those compositions included both modified starch and iota carrageenan. When the Evaluation Agreement and negotiations with Plaintiff ended, Defendant continued the development of its own primarily starch-based compositions for making gelatin free capsules. (*Id.* ¶ 11).

The documents at issue are two internal emails ("emails") that Bob Stevens sent to Peter Draper on January 19, 2000. The emails were written shortly after the parties' evaluation agreements and licensing negotiations had been terminated. Mr. Stevens was Scherer's Director of Corporate Intellectual Property and Mr. Draper was in charge of the company's Gelatin Alternative Project when the emails were written.

Over two years later, on March 7, 2002, Plaintiff filed a complaint with the United States

District Court for the District of New Jersey. [Docket Entry # 1]. During discovery, Defendant produced the emails in question, apparently inadvertently. On May 2, 2006, Defendant filed this Motion for Discovery *Order Sustaining Privilege* to compel Plaintiff to return the emails that were produced. [Docket Entry # 212].

Defendant argues that the emails were written in anticipation of litigation making them privileged under the work product doctrine embodied in Fed. R. Civ. P. 26(b)(3). Plaintiff argues that the emails predated any litigation between the parties by almost two years, which both standing alone and together with other circumstances precludes the possibility that they were prepared in anticipation of litigation. Therefore, Plaintiff claims that the emails are not protected by the work product privilege doctrine.

## II. DISCUSSION

Work product doctrine is codified by Rule 26(b)(3) of the Federal Rules of Civil Procedure. Rule 26(b)(3) provides that documents and other tangible things prepared in anticipation of litigation are generally protected from discovery by another party. See Fed. R. Civ. P. 26(b)(3).

> ...A party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Id. For a document to be protected by work product privilege, it must have been prepared in "anticipation of litigation." Id. "A document satisfies Rule 26(b)(3) when 'in light of the nature of the document and the factual situation in the particular case, the document can fairly have been prepared or obtained because of the prospect of litigation.'" Martin v. Bally's Park Place Hotel &

Casino, 983 F.2d 1252 (3d Cir. 1993) (quoting In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir. 1979)).

The Third Circuit has adopted a two prong test to determine the factually based inquiry of whether a document was prepared "in anticipation of litigation." To fall within the privilege which the moving party asserts, the documents must have been prepared (1) at a time when litigation was reasonably predictable or foreseeable, and (2) primarily for the purpose of litigation. In re Gabapentin Patent Litig., 214 F.R.D. 178, 184 (D.N.J. 2003); United States v. Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir. 1990).

### III.   ANALYSIS

#### A.   *Reasonably Predictable or Foreseeable Litigation*

Defendant claims that the emails in question are protected under work product doctrine as they were created in 'anticipation of litigation.' Defendant argues that the emails' content was specifically aimed at preparing for the prospect of patent infringement litigation which triggers work product privilege. Plaintiff claims that the emails do not qualify for protection under work product doctrine. Plaintiff argues that the emails were not created in 'anticipation of litigation' because litigation was not reasonably predictable. The first prong of the work product analysis requires litigation to be reasonably predictable or foreseeable if documents are to be protected. See United States v. Ernstoff, 183 F.R.D. 148, 155 (D.N.J. 1998). Litigation is reasonably predictable or foreseeable when there is "an identifiable specific claim of impending litigation" at the time the documents are prepared. Maertin v. Armstrong World Industries, Inc., 172 F.R.D 143, 148 (D.N.J. 1997) (quoting Leonen v. Johns-Manville, 135 F.R.D. 94, 97 (D.N.J. 1990)). The mere possibility of litigation is insufficient to meet the 'in anticipation of litigation' requirement. George v. Siemens Indus. Automation, Inc., 182 F.R.D. 134, 141 (D.N.J. 1998).

Further, litigation that eventually occurs is not enough to establish that documents prepared before the litigation were necessarily created in anticipation of that litigation. Leonen, 153 F.R.D. at 97. (There must be "more than a 'remote prospect,' and 'incohate possibility', or a 'likely chance of litigation.'" Harper v. Auto-Owners Insurance Co., 138 F.R.D. 655, 660 (S.D. Ind. 1991); see also Ernstoff, 183 F.R.D. at 155 (collecting cases)).

Defendant asserts work product privilege on emails generated in January, 2000. At that time, there was no specific identifiable claim of impending litigation. The emails mention nothing beyond a vague overall concern regarding possible patent infringement issues. In the January 19, 2000 email, Mr. Stevens wrote: "The key question here for patent purposes is: Could the Purecote and other similar starches, which we could use in conjunction with iota carageenan, be classified as gelling agents or do they have gelling properties. This is critical to the judgment of infringement." (Stevens Cert., Ex. A.). It is also important to note that Defendants were developing their own independent formula at the time. Furthermore, although the emails were written at a time when there was a stall in license negotiations between parties, these negotiations were resumed within a matter of weeks. In fact, Defendant and Plaintiff entered into an exclusive licensing agreement and an employment arrangement for Dr. Paris shortly thereafter and the present case is an entirely new litigation.

Despite this, Defendant claims that there was a legitimate threat of litigation based on a letter written on September 17, 1998. In that letter, Dr. Paris expressed her suspicion that Defendants were interfering with her material supplier. However, not only did this letter predate the subject emails by more than a year, the emails do not address this potential threat.

In support of its claim that the emails are protected under work product doctrine, Defendant relies on American Optical Corp. v. Medtronics, Inc., 56 F.R.D. 426, 428 (D. Mass.

1972). In American Optical, the parties entered into license negotiations *after* American Optical accused Medtronic of patent infringement. Medtronic agreed to the license agreement exclusively to avoid litigation of the matter which would seriously affect its ability to obtain public funding. Id. Unlike the case at hand, the issues underlying the parties' licensing agreement in American Optical were in the context of a patent infringement suit already filed. Furthermore, the documents in question in American Optical were prepared by an attorney and included, among other things, legal memoranda analyzing Medtronic's patents and hand written notes from negotiations which, in the words of the court, were the "opinions, impressions, theories and conclusions" of the attorney. Id. at 430. Unlike the emails in the present case, the documents in American Optical were precisely the attorney work product that Rule 26(b)(3) was designed to protect. See id. at 430-431.

**B.     *Documents Produced Solely for the Purpose of Litigation***

The second prong of the work product analysis requires that the document that a party is seeking to protect be produced for no other purpose than the prospect of litigation. Gabapentin, 214 F.R.D. at 184 (quoting Harper, 138 F.R.D. at 660). A document that was prepared for other reasons that becomes useful for litigation does not meet the "prepared primarily for litigation" standard. Ernstoff 183 F.R.D. at 156. Documents created in the ordinary course of business are generally not included in the work product doctrine. Rockwell, 897 F.2d at 1265-66.

The emails the Defendant seeks to protect were not made solely for the purpose of litigation. Each of the emails addressed activities conducted in the ordinary course of conducting research and development in view of either commercialization of products or of patent prosecution, not litigation. Mr. Stevens, in his certification to the court, stated that he wrote the emails in question in anticipation of a possible patent infringement suit brought by Dr. Paris.

However, Mr. Stevens' subjective view that the emails he wrote were solely in anticipation of litigation does not bear on the objective legal function of the emails. An objective legal analysis of the content of Mr. Stevens' emails reveals that they could serve many purposes since they could be construed as communications regarding a patent application or patent prosecution which are not protected by the work product doctrine simply because they may at some point give rise to an infringement action. See Gabapentin, 214 F.R.D. at 184-85. For example, they could have been created to aid a future patent infringement action initiated by Defendant in connection with their own anticipated independent formula and product. Therefore, the Court finds that the emails were not produced solely for the prospect of litigation.

**CONCLUSION**

For the reasons stated herein, Defendant's Motion for Discovery *Order Sustaining Privilege* is denied. The Court finds that the emails in question were not written at a time when litigation was reasonably predictable and foreseeable nor were they written solely in anticipation of litigation. Therefore, the emails are not protected by the work product doctrine. An appropriate order accompanies this Memorandum Opinion.

Dated: July 13, 2006

                                           */s/ John J. Hughes*
                                           **JOHN J. HUGHES**
                                           **UNITED STATES MAGISTRATE JUDGE**